**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHUBB NATIONAL INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, | ) ) ) | CIVIL ACTION |
| | ) | NO. 2:22-CV-01042-NR |
| Plaintiffs, | ) | |
| v. | ) ) | |
| JONATHAN D'CUNHA, M.D., Ph.D, | ) ) | |
| Defendant. | ) ) | |
| | ) | |
| DR. JONATHAN D'CUNHA, | ) ) | |
| Third Party Plaintiff, | ) ) | |
| v. | ) ) | |
| TRI-CENTURY INSURANCE COMPANY, THE UNIVERSITY OF PITTSBURGH PHYSICIANS; and THE UNIVERSITY OF PITTSBURGH MEDICAL CENTER, | ) ) ) ) ) ) | |
| Third Party Defendants. | ) ) | |

**CRESTBROOK INSURANCE COMPANY'S**
**MOTION TO INTERVENE**

Crestbrook Insurance Company ("Crestbrook"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 24 (a)(2) and/or (b)(1)(B), moves to intervene in this civil action to institute an action for declaratory judgment, equitable contribution and equitable subrogation against Third-Party Defendant Tri-Century Insurance Company in connection with the claims which are

1

the subject of Third-Party Defendant Jonathan D'Cunha's Third-Party Complaint against Tri-Century Insurance Company.

Crestbrook seeks to intervene as of right and by permission, as this Court's adjudication of the insurance coverage issues identified in the D'Cunha Third-Party Complaint against Tri-Century Insurance Company will, as a practical matter, impair Crestbrook's ability to protect its interests in securing equitable contribution from Tri-Century for the costs of the defense incurred in the defense of Lara Schaheen, M.D. in the Underlying Action or in pursuing equitable subrogation of rights held by Dr. Schaheen to insurance coverage from Tri-Century for the defense of the Underlying Action.  Alternatively, common questions of law and fact are presented by D'Cunha's Third-Party Complaint and Crestbrook's claims against Tri-Century.

In support thereof, Crestbrook avers as follows:

1.     Crestbrook is a corporation organized and domiciled under the laws of the state of Ohio and maintains a principal place of business located at 18700 N. Hayden Road, Scottsdale, Arizona 85255.

2.     Upon information and belief, Tri-Century is a corporation organized and existing under the laws of Pennsylvania with a principal place of business located at 600 Grant Street, Pittsburgh, Pennsylvania 15219.

3.     Crestbrook is the issuer of a homeowner's liability insurance policy (Policy No. HO00092095-02) under which Lara Schaheen, M.D. claims omnibus insured status for allegations of liability made against her in the civil action,

<u>Bernadette and Paul Fedorka, h/w v. University of Pittsburgh Medical Center, et al.</u>, Docket CCP (Allegheny) No. GD-18-017117 ("the Underlying Action").   In the Underlying Action, Defendant James D. Luketich, M.D., FACS instituted a Third-Party Complaint against Jonathan D'Cunha, M.D., Ph.D. and Dr. Schaheen.

4.     On January 27, 2022, Attorney Scott D. Livingston tendered the defense and indemnification of Dr. Schaheen and Dr. D'Cunha to Third-Party Defendant Tri-Century Insurance Company under a policy of professional liability coverage issued by Tri-Century (Policy No. TRI-1843).

5.     Dr. Schaheen also tendered the defense of the Luketich Third-Party Complaint to Crestbrook.

6.     On February 8, 2022, Tri-Century acknowledged by correspondence the defense tender and represented that Dr. Schaheen and Dr. D'Cunha qualified as insureds under the Tri-Century Policy for the policy period effective January 1, 2018 through January 1, 2019.  A true and correct copy of the Tri-Century correspondence is attached as Exhibit "A".

7.     In the February 8th correspondence, Tri-Century disclaimed coverage to Drs. Schaheen and D'Cunha for the claims in the Underlying Action including any duty to defend Dr. Schaheen.

8.     Crestbrook has undertaken Dr. Schaheen's defense in the Underlying Action at its expense under a reservation of rights.

9.     Crestbrook has incurred and will incur substantial costs in the defense of Dr. Schaheen in the Underlying Action.

10.     Crestbrook tendered the defense of the Luketich Third-Party Complaint to Tri-Century Insurance Company in which it has asserted that Tri-Century bears primary responsibility for the defense of Dr. Schaheen.

11.     Tri-Century has not assumed the defense of Dr. Schaheen, nor has it agreed to share in the cost of defense of Dr. Schaheen with Crestbrook.

12.     On August 30, 2022, Defendant Jonathan D'Cunha, M.D. instituted a Third-Party Complaint against Tri-Century Insurance Company and others [ECF Doc. 12], in which Dr. D'Cunha avers that Dr. D'Cunha tendered the defense of the Luketich Third-Party Complaint to Tri-Century and that it disclaimed coverage in the February 8, 2022 denial letter.  D'Cunha Third Party Complaint, ¶2.

13.     Dr. D'Cunha avers that Tri-Century's stated basis for its coverage denial is its contention that "the claims asserted against Dr. D'Cunha involving his alleged false reports about Dr. Luketich's misconduct do not arise from injuries resulting from a medical incident".  Id. at ¶3.

14.     Dr. D'Cunha avers that the Tri-Century policy extends coverage for claims involving the furnishing of professional medical … services … arising from the practice of the insured's profession as a physician."  Id.

15.     In the Third-Party Complaint, Dr. D'Cunha avers that physicians have a core professional and ethical duty to report impaired colleagues and that to discharge his professional and employment duties, he sent an anonymous letter to UPMC in April 2018 reporting Dr. Luketich's substance abuse and resulting impairment. Id. at ¶45.  Dr. D'Cunha avers that Dr. Luketich's Third-Party

Complaint is premised on the contention that Dr. D'Cunha should not have reported him to UPMC or to the Pennsylvania State Board of Medicine and that the publications about Dr. Luketich were defamatory. Id. at ¶54-57.

16.    In the Third-Party Complaint, Dr. D'Cunha avers that Tri-Century was and is obligated to defend him in the Underlying Action under the malpractice policy because the coverage grant for "claims involving the furnishing of professional medical services" encompasses the fulfillment of professional duties including the reporting of a peer's impairment to UPMC or to the Medical Board and these duties required the exercise of professional knowledge. Id. at ¶73-75.

17.    Dr. D'Cunha avers that the Tri-Century Policy provides coverage for claims asserted by a non-client who was not in privity with the insured. Id. at ¶71.

18.    Dr. D'Cunha avers in Count I of the Third-Party Complaint a claim for declaratory relief that Tri-Century is obligated to pay for Dr. D'Cunha's defense in the Underlying Action. Id. at ¶97-103.

19.    In Count III of the Third-Party Complaint, Dr. D'Cunha avers that Tri-Century has breached the insurance contract by disclaiming any obligation to defend. In Count II, Dr. D'Cunha seeks declaratory relief with regard to Tri-Century's obligation to indemnify him for the claim in the Underlying Action.

20.    Dr. Luketich avers in the Underlying Action that Dr. Schaheen is a former UPMC surgical resident in the UPMC cardiothoracic surgery integrated residency program. Luketich Third Party Complaint at ¶234, attached to Chubb Complaint as Exhibit "A".

21.     Dr. Luketich avers in the Underlying Action that Drs. Schaheen and Dr. D'Cunha, unlawfully surveilled and captured a privileged consultation between himself and a treating physician in violation of state and federal wiretap laws, the Health Insurance Portability and Accountability Act ("HIPAA"), the "physician/patient privilege", common law rights of privacy and UPMC policies regarding the confidentiality of patient encounters. Luketich Third Party Complaint, ¶232, attached to Chubb Complaint as Exhibit "A".

22.     Luketich avers that Drs. Schaheen and D'Cunha distorted and disseminated information gleaned from the medical consultation to publish allegedly false and defamatory communications about Dr. Luketich to their joint employer, the University of Pittsburgh Medical Center ("UPMC"), to the Pennsylvania Board of Medicine, a competing academic center, the U.S. Attorney's Office, the Federal Bureau of Investigation, private lawyers, and to the general public. Id. at ¶233.

23.     Dr. Luketich states that on April 14, 2018, an anonymous "peer reporter" called the UPMC Ethics and Compliance Hotline and made a complaint about Dr. Luketich which was false and defamatory. He states that another anonymous complaint about him was received on April 24, 2018 which included charges that Dr. Luketich was potentially harming patients. Id. at ¶275.

24.     Dr. Luketich avers that on May 10, 2018, a UPMC employee notified an administrator that she spoke with Dr. Schaheen who supposedly told her that she filed an anonymous complaint against Dr. Luketich and that she "was going to take him down". Id. at ¶279.

25.     Dr. Luketich alleges that Dr. Schaheen accessed and took electronic medical records kept by UPMC in June and July 2018 without patient releases and in violation of HIPAA and provided those records to third parties in an effort to instigate the Fedorka malpractice lawsuit and to extort Dr. Luketich.  Id. at ¶292.

26.     In his Third-Party Complaint, Dr. Luketich has averred claims against D'Cunha and Schaheen of civil conspiracy (Count I); injunctive relief (Count II); violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act (Count III); defamation (Count IV); invasion of privacy (Count V); tortious interference with contractual relations (Count VI); commercial disparagement (Count VII); replevin (Count VIII); conversion (Count IX); and abuse of process (Count X).

27.     Crestbrook issued a Personal Homeowners Renewal Policy (No. HO00092095-02) to William Wu ("the Policy") for the period of September 28, 2017 to September 28, 2018.

28.     Dr. Schaheen has claimed that she qualifies as an Insured as a "domestic partner" of the named insured, Mr. Wu, during certain periods of time encompassed by the allegations of the complaint in the Underlying Action.

29.     Section II of the Crestbrook Policy at Coverage E-Personal Liability states, in pertinent part, as follows:

> 1.     **We** will pay damages an **insured** is legally obligated to pay due to an **occurrence** resulting from:
>
>     a.     Negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property at an **insured location**; and

     b.     Other personal activities anywhere in the world, unless stated otherwise or an exclusion applies.

     2.     **We** will provide a defense at **our** expense by counsel of **our** choice.  **We** may investigate and settle any claim or **suit**.  **Our** duty to defend a claim or **suit** ends when the amount **we** pay for damages equals **our** limit of liability.

30.     Section II of the Policy contains an "other insurance" provision which states:

     3.     This coverage is excess over other valid and collectible insurance.  It does not apply to insurance written as excess over this policy.

31.     The Policy defines an "occurrence" to mean:

     a.     An accident, including continuous or repeated exposure to the same general harmful conditions, which results, during the policy period, in **bodily injury** or **property damage**.

     b.     Act or series of acts of the same or similar nature that occurs during the policy period and which results in **personal injury**.

32.     The Policy defines "personal injury" to mean:

     a.     False arrest, false imprisonment, wrongful eviction, wrongful entry;

     b.     Wrongful detention or malicious prosecution;

     c.     Libel, slander, defamation of character, or invasion of rights of privacy;

     d.     Shock, emotional distress or mental injury; or

     e.     Assault and battery when committed with the intent of protecting persons.

33.     The Policy at Section II contains Liability Exclusions which include:

Coverage E-Personal Liability … do not apply to **bodily injury**, **property damage** or **personal injury**:

a.   Expected or intended injury

**We** do not cover any damages arising out of a willful, malicious, fraudulent or dishonest act or any act intended by any **insured** to cause **bodily injury**, **personal injury** or **property damage**. … But **we** do cover such damage if the act was intended to protect people or property unless another exclusion applies.

b.   Malicious or Criminal Acts

**We** do not cover any damages arising out of a willful, malicious, or criminal act or omission by any **insured** whether or not the injuries or damages are actually intended, expected or foreseeable by a rational person. But **we** do cover such damages if the act was intended to protect people, or property unless another exclusion applies.

c.   Arising out of **business** pursuits of an **insured**. This exclusion applies, but is not limited, to an act or omission, regardless of its nature or circumstances, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the **business**…
     …
e.   Arising out of any **professional services**.

34.   The adjudication of the D'Cunha Third-Party Complaint against Tri-Century for declaratory judgment and breach of the duty of defense and indemnification will necessarily address the same legal issues bearing on Dr. Schaheen's entitlement to a legal defense and potential indemnification under the Tri-Century policy for the allegations asserted against Dr. Schaheen in the Luketich Third-Party Complaint and, by extension, Crestbrook's claimed right to secure equitable contribution from Tri-Century for the costs of defense that Crestbrook has

9

incurred and will incur in its defense of Dr. Schaheen and/or its rights to subrogate to Dr. Schaheen for breach of the duty to defend Dr. Schaheen.

35.     In the absence of Crestbrook as a party, Crestbrook's legal interests will be impaired or adversely affected by the disposition of the Third-Party Complaint.

36.     Crestbrook's claimed right to recovery from Tri-Century is not represented by the existing parties to the litigation.

37.     Crestbrook's petition to intervene is timely given that this case is in its very early stages and no discovery has taken place.

38.     Accordingly, Crestbrook claims a right to intervene under Fed. R. Civ. P. 24 (a) in the Third-Party Complaint against Tri-Century Insurance Company.

39.     Alternatively, Crestbrook has a claim against Tri-Century which shares with the main action a common question of law or fact, justifying intervention under Fed. R. Civ. P. 24 (b)(1)(B).

40.     These common claims of fact or law include whether Tri-Century has an obligation to undertake the defense of the Underlying Action and has a potential duty of indemnity for its insured, Dr. Schaheen.

41.     The proposed intervenor's interests in securing a declaratory judgment as it pertains to Tri-Century's obligation to undertake the defense of Dr. Schaheen, its obligation to reimburse Crestbrook for defense costs incurred and the respective priority of coverage of the insurers for the claims against Dr. Schaheen are not represented by any of the existing parties.

42.     Crestbrook's petition is timely and the granting of the proposed intervention will not unduly delay or prejudice the adjudication of the original parties' rights.  Fed. R. Civ. P. 24 (b)(3).

43.     The proposed complaint should this petition be granted is attached as Exhibit "B".

44.     In support of this petition, Crestbrook submits the accompanying memorandum of law, the contents of which are incorporated herein.

**WHEREFORE**, Crestbrook Insurance Company, respectfully requests that its petition to intervene be granted and that it be permitted to file the proposed Complaint in Intervention.

Respectfully submitted,

SWARTZ CAMPBELL LLC

*/s/ Michael E. Giblin*
Michael E. Giblin, Esq.
PA I.D. #86751
436 7th Avenue, Floors 7 & 8
Koppers Building
Pittsburgh, PA  15219
Phone: (412) 232-9800
Fax: (412) 471-1106
mgiblin@swartzcampbell.com

*Attorney for Movant/Proposed Intervenor, Crestbrook Insurance Company*